UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELSAYED A. ELNENAEY,<br><br><div align="center">Plaintiff,</div><br>– *against* –<br><br>FIDELITY BROKERAGE SERVICES, LLC, NATIONAL FINANCIAL SERVICES, LLC, FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC., VANGUARD MARKETING CORPORATION, JARED J. DUNTON, *and* JOSEPH P. BACON,<br><br><div align="center">Defendants.</div> | <div align="center">**OPINION & ORDER**<br><br>23-cv-06970 (ER)</div> |

RAMOS, D.J.:

Elsayed A. Elnenaey brought this action seeking to vacate an arbitration award issued in May 2023.  His amended petition to vacate focuses on a single claim for "unauthorized practice of law" against three defendants:  National Financial Services, LLC, and Joseph P. Bacon (collectively, "the Fidelity Defendants") and Vanguard Marketing Corporation.  Doc. 16.  Those defendants have opposed Elnenaey's petition and have cross-moved to confirm the award.  Docs. 22, 25.  Elnenaey's petition to vacate is DENIED, and the cross-motions to confirm are GRANTED.

## I.    BACKGROUND

### A.  The Nevada Divorce Action

This case began with a marital dispute.  Elnenaey and his then-wife, Mervat Osman, visited Nevada in 2013.  Doc. 16 ¶ 23; *see* Doc. 25-3 ¶ 6.  At the time, the couple had been living in Egypt for over a decade.  Doc. 16 ¶ 22.  During the Nevada trip, Elnenaey experienced heart failure and spent weeks in the intensive care unit.  *Id.* ¶ 23.  Elnenaey asserts that Osman filed for divorce in Nevada state court "while [he] was debilitated."  *Id.*; *see* Doc. 25-3 ¶ 22.

On November 14, 2013, Fidelity and Vanguard received a joint preliminary injunction that restricted Elnenaey's ability to withdraw assets from his accounts. Doc. 25-3 ¶ 23; *see* Doc. 22 at 2; Doc. 25-1 at 2. Elnenaey notes that the injunction "was not signed by a judge or even filed in Court." Doc. 16 ¶ 24. But the injunction was signed by Osman's counsel and was sealed by the Clerk of Court for the Nevada state court. *Id.* at 62.

In a letter dated November 20, 2013, Bacon—a legal operations analyst at Fidelity—notified Elnenaey that his Fidelity account had been restricted. *Id.* ¶ 25; *see id.* at 74. Bacon stated that the restriction would remain in place until Fidelity received either "instructions from both parties" or a certified court order to release the account. *Id.* at 74. Two days after that, Nichole Lobodzinski—a legal analyst at Vanguard—sent Elnenaey a similar letter. *Id.* ¶¶ 26, 8 n.2; *see id.* at 63. Lobodzinski informed Elnenaey that his Vanguard accounts had been restricted and that Vanguard would maintain the restriction until a court of competent jurisdiction ordered otherwise. *Id.* at 63.

Elnenaey believed that Bacon and Lobodzinski were lawyers "representing [his] best interests," and he viewed their letters as legal advice. *Id.* ¶¶ 25–26. Relying on that advice, Elnenaey—unrepresented by counsel—asked the Nevada court to release his accounts. *Id.* ¶ 27. The Nevada court directed Fidelity and Vanguard to lift the restrictions in an order dated February 19, 2014. *Id.* at 67.

Eventually, Elnenaey retained counsel in the divorce action. *Id.* ¶ 28. His attorney moved to dismiss based on *forum non conveniens* because the couple lived in Egypt. *Id.* According to Elnenaey, the Nevada court denied the motion because Elnenaey had already appeared in the matter and had requested the removal of the account restrictions. *Id.*; *see id.* at 69.

The Nevada court ultimately awarded the entirety of the Fidelity and Vanguard accounts to Osman. *Id.* ¶ 30. Elnenaey spent $100,000 in postjudgment legal fees to challenge the outcome, but the judgment was upheld. *Id.* ¶ 32. In his view, "[t]he entire

Nevada divorce proceeding could have been avoided if [his] money was not frozen." *Id.*
¶ 29; *see also* Doc. 26 at 3 ("The account restrictions were the only reason I contested the
divorce.  Otherwise, I would have left my ex-wife in Nevada and returned home to
Egypt.").  Elnenaey contends that the Fidelity Defendants and Vanguard are at fault for
wrongfully restricting his accounts and requiring him to seek a court order to restore
access.  Doc. 16 ¶ 31.

### B.  The Florida Action

In February 2019, after the conclusion of the divorce proceeding, Elnenaey sued
Fidelity Management Trust Company, Inc., Fidelity Investments Institutional Services
Company, Inc., FMR LLC, and Osman in the U.S. District Court for the Middle District
of Florida.  Doc. 22-2.  Elnenaey asserted, among other things, that the corporate
defendants had breached their fiduciary duties under the Employee Retirement Income
Security Act of 1974 (ERISA).  *Id.* ¶¶ 49–53.

Magistrate Judge Thomas G. Wilson issued a report and recommendation (R&R)
concluding that there were "fundamental flaws" in Elnenaey's complaint.  Doc. 22-3 at 2.
The R&R recommended that the claims against the corporate defendants be dismissed
with leave to amend but that the claims against Osman be dismissed without leave to
amend.  *Id.* at 5.  Elnenaey then filed an amended complaint, Doc. 22-4, which mooted
the R&R, *see* Doc. 22-5 at 2.  In a second R&R, Magistrate Judge Wilson concluded that
the amended complaint was deficient as well.  Doc. 22-5 at 2.  He once again
recommended that the claims against the corporate defendants be dismissed with leave to
amend but that the claims against Osman be dismissed without leave to amend.  *Id.*
Elnenaey objected to the R&R.  *See* Doc. 22-6 at 1.  In an order dated July 31, 2019,
Judge Tom Barber overruled the objection, adopted the R&R, and dismissed all claims.
*Id.* at 3–4.  Judge Barber stated that Elnenaey could file a second amended complaint as
to the corporate defendants by August 30, 2019.  *Id.* at 4.

Instead of filing an amended complaint, Elnenaey appealed the dismissal to the Eleventh Circuit. *See* Doc. 22-7 at 5 n.2. On October 7, 2020, the Eleventh Circuit affirmed Judge Barber's order dismissing all claims. *Id.* at 6.

### C. The Arbitration Proceeding

Nearly two years later, in July 2022, Elnenaey initiated an arbitration proceeding with the Financial Industry Regulatory Authority (FINRA). At some point before he filed for arbitration, Elnenaey had learned that Fidelity was advertising for a "legal analyst" position. Doc. 16 ¶ 33. The advertisement stated that the position involved "[a]nalyzing court and administrative orders to determine whether they are enforceable and when it is appropriate [to] restrict accounts or transfer assets." *Id.* (emphasis omitted). The position did not require a law degree or a law license. *Id.* ¶¶ 33–34. Elnenaey filed a whistleblower complaint with the Securities and Exchange Commission (SEC) "based on the apparent illegal practice of hiring unqualified nonlawyers to engage with customers in the unauthorized practice of law." *Id.* ¶ 35.

Elnenaey also investigated the legal analysts—Bacon and Lobodzinski—who had corresponded with him about his account restrictions during the Nevada divorce proceeding. *Id.* ¶ 36. In doing so, Elnenaey learned that both Bacon and Lobodzinski were not attorneys and did not attend law school. *Id.*; Doc. 26 at 3.

Based on these discoveries, Elnenaey began the arbitration process to recover over $1.5 million that he lost due to "unqualified legal advice." Doc. 16 ¶ 38. Elnenaey signed a FINRA arbitration submission agreement on July 13, 2022. Doc. 25-4. That agreement listed National Financial, Vanguard, and Bacon as respondents, along with Fidelity Brokerage Services LLC, Fidelity Distributors Company LLC, and Jared J. Dunton. *Id.*[1] Elnenaey also filed a statement of claim on July 13, and he filed an updated

---

[1] According to Elnenaey, Dunton "is a dually registered hybrid B/IA at [Fidelity Brokerage] and affiliates," who was assigned to Elnenaey's account in 2014 after it was restricted. Doc. 25-3 ¶ 12. Elnenaey also states that he did not name Lobodzinski as a respondent in the arbitration proceeding because she is not a FINRA-licensed broker. Doc. 16 ¶ 8 n.2.

version on July 15. *See* Doc. 25-9 at 6. The amended statement of claim included several causes of action, as well as allegations concerning the "unauthorized practice of law." Doc. 25-3 at 10 (capitalization omitted). Elnenaey asserts that the unauthorized practice of law claim—the only claim at issue here—was brought against National Financial, Vanguard, and Bacon. Doc. 16 ¶ 41.[2]

In October 2022, FINRA notified the parties that a panel of three arbitrators had been appointed. Doc. 25-6. FINRA also provided the parties with a disclosure report for each panelist. Doc. 25-1 at 3; *see* Doc. 25-7. Those reports included information about the panelists' employment history, educational background, and potential conflicts. Doc. 25-1 at 3; *see* Doc. 25-7. One of the reports indicated that panelist Eric Howard had worked for FINRA as a legal extern from May 2009 to August 2009. Doc. 25-7 at 2, 4. All parties accepted the composition of the panel. Doc. 25-8 at 3.

The five Fidelity respondents—that is, all respondents except for Vanguard—moved to dismiss pursuant to Rule 12504(a)(6)(C) of the Code of Arbitration Procedure on October 14, 2022. Doc. 25-9 at 6. That rule allows for dismissal if "the non-moving party previously brought a claim regarding the same dispute against the same party that was fully and finally adjudicated on the merits and memorialized in an order." *Id.* at 7. The panel granted the motion to dismiss on November 29, 2022, concluding that the Florida court's order dismissing the case was an adjudication on the merits. *Id.* at 6–7.

On February 17, 2023, Vanguard moved to dismiss pursuant to Rule 12206(a) of the Code. *Id.* at 7. Rule 12206(a) provides that "no claim shall be eligible for submission to arbitration under the Code where six (6) years have elapsed from the occurrence or event giving rise to the claim." *Id.* The panel observed that Vanguard had restricted Elnenaey's accounts in November 2013 and lifted the restrictions in March 2014, but he

---

[2] The other claims were: "unlawful account restriction"; "violation of court order, conversion, and cover-up"; "violation of the Internal Revenue Code"; "recordkeeping and ERISA violations"; "breach of contract"; "breach of fiduciary duty, failure to transfer funds"; and "conspiracy to commit elder financial exploitation." Doc. 16 ¶ 41 (capitalization omitted).

had not filed the statement of claim until July 2022. *Id.* As a result, on April 19, 2023, the panel granted Vanguard's motion to dismiss "without prejudice to any right [Elnenaey] has to file in court." *Id.*

The panel issued a final award on May 1, 2023. *Id.* at 10. It stated that "the Panel has decided in full and final resolution of the issues submitted for determination as follows":

1. [Elnenaey's] claims against Fidelity Respondents are dismissed in their entirety.

2. [Elnenaey's] claims against Respondent [Vanguard] are dismissed without prejudice.

*Id.* at 8. The panel also ordered Elnenaey to pay Vanguard $500 in sanctions for failure to comply with discovery orders. *Id.*

In June 2023, Elnenaey moved to reopen the Florida case pursuant to Federal Rule of Civil Procedure 60(b). Doc. 22-11. He argued that the court's order of dismissal "was mischaracterized by Fidelity to deny [Elnenaey] his contractual right to pursue his claims in arbitration." *Id.* at 1. According to Elnenaey, the dismissal was voluntary because he had "*elected* not to amend" his complaint, *id.* at 3, choosing instead to pursue a "narrow appeal" to the Eleventh Circuit, *id.* at 2 n.1.

Judge Barber denied Elnenaey's request to reopen the case. *Elnenaey v. Fidelity Mgmt. Tr. Co.*, No. 19 Civ. 349 (TPB) (TGW), 2023 WL 7131836, at *1 (M.D. Fla. Oct. 30, 2023).[3] Judge Barber explained that "there was no voluntary dismissal" and that the ultimate order dismissing the case "was an adjudication on the merits." *Id.* Although Elnenaey "may have misunderstood the legal effect of his actions, . . . that does not constitute a basis for relief under Rule 60." *Id.*

_____

[3] The Court may take judicial notice of this decision even though the parties have not submitted a copy of it. *See, e.g.*, *Simeone v. T. Marzetti Co.*, No. 21 Civ. 9111 (KMK), 2023 WL 2665444, at *2 (S.D.N.Y. Mar. 28, 2023) (noting that "courts in the Second Circuit regularly take judicial notice of decisions and orders issued by other courts").

### D. This Action

Meanwhile, Elnenaey commenced this action on August 7, 2023, by filing a petition to vacate the arbitration award. Doc. 1. He named as respondents National Financial, Vanguard, and Bacon, along with Fidelity Brokerage, Fidelity Investments, and Dunton. *Id.* at 1.

A few months later, on December 25, Elnenaey filed an amended petition to vacate. Doc. 16. In a separate letter to the Court, Elnenaey stated that he was amending the case caption and the petition to comply with Judge Barber's October 30 order denying the motion to reopen the Florida action. Doc. 17. Elnenaey explained that "to [his] surprise, the Order serves as an adjudication on the merits of the ERISA-related claims." *Id.* at 2. He was therefore "removing the ERISA-related claims and limiting this Court's review to a single cause of action that accrued after the ERISA case had concluded." *Id.* In the amended petition, Elnenaey asks this Court to review only his cause of action for unauthorized practice of law against the Fidelity Defendants—that is, National Financial and Bacon—and Vanguard. Doc. 16 ¶ 20. He does not seek to vacate the award with respect to the other defendants. *Id.* ¶ 9.

The Fidelity Defendants responded to the amended petition to vacate and cross-moved to confirm the award on January 25, 2024. Doc. 22. Vanguard did the same on February 20. Doc. 25. Elnenaey filed a consolidated response and reply on March 19. Doc. 26. Both the Fidelity Defendants and Vanguard replied on April 2. Docs. 29, 30. Elnenaey filed another letter on April 22, Doc. 36, which the Court accepted as a sur-reply, Doc. 37.[4]

---

[4] Elnenaey suggests that the cross-motions to confirm the award are procedurally improper. Doc. 26 at 8; Doc. 36 at 2. But it is not uncommon for a respondent to file such a cross-motion while also opposing a petition to vacate an award. *See, e.g.*, *Shenzhen Zongheng Domain Network Co. v. Amazon.com Servs. LLC*, No. 23 Civ. 03334 (JLR), 2023 WL 7327140, at *3 (S.D.N.Y. Nov. 7, 2023).

## II.    LEGAL STANDARD

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted). The Second Circuit has recognized that "an extremely deferential standard of review for arbitral awards" is appropriate "[t]o encourage and support the use of arbitration by consenting parties." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks and citation omitted). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *Id.* (internal quotation marks and citation omitted).

An arbitration award "may only be vacated on extremely limited grounds." *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 340 (S.D.N.Y. 2014). A party seeking vacatur "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Under the Federal Arbitration Act (FAA), a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly
executed them that a mutual, final, and definite award upon the sub-
ject matter submitted was not made.

9 U.S.C. § 10(a). The Second Circuit has also held that "the court may set aside an

arbitration award if it was rendered in 'manifest disregard of the law.'" *Schwartz v.*

*Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (quoting *T.Co Metals, LLC v.*

*Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010)).

      Here, the Court notes that Elnenaey is proceeding pro se. "A pro se litigant's

papers must be construed liberally 'to raise the strongest arguments they suggest.'" *Jules*

*v. Andre Balazs Props.*, No. 20 Civ. 10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y.

Sept. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)). At the

same time, "pro se status does not exempt a party from compliance with relevant rules of

procedural and substantive law." *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 477 (2d Cir. 2006)).

## III. DISCUSSION

      Elnenaey asks this Court to vacate the award and "allow the unauthorized practice

of law cause of action to be heard on its merits." Doc. 16 at 20. His main contention is

that the panel failed to address that claim. In addition, he points to several other alleged

procedural deficiencies that, in his view, also require vacatur. None of these arguments

are persuasive.[5]

### A. Unauthorized Practice of Law Claim

      Elnenaey argues that the panel did not issue "a final and definite award" because it

"never even acknowledged" his unauthorized practice of law claim. *Id.* at 14. He relies

on the following language in the award:

In the Statement of Claim, [Elnenaey] asserted the following causes
of action: violation of a direct court order, conversion of funds, and
fraudulent cover up; violation of the Internal Revenue Code;

---

[5] At the outset, Vanguard contends that the petition to vacate should be denied because Elnenaey did not
timely serve Vanguard with notice of the petition. Doc. 25-1 at 4–7. Because Elnenaey's arguments fail on
the merits, the Court need not reach this issue.

> recording keeping and ERISA violations; breach of contract; breach
> of fiduciary duty, failure to transfer funds; and conspiracy to
> commit elder financial exploitation. The causes of action relate to allegations
> of improper placement of restrictions on [Elnenaey's] accounts.

Doc. 25-9 at 6; *see* Doc. 16 at 14. Because the panel did not mention the unauthorized practice of law claim, Elnenaey reasons, it could not have reached a final and definite award. Doc. 16 at 14.

The FAA provides that an arbitration award may be vacated if "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "The Second Circuit has 'consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4).'" *Ace American Insurance Co. v. Christiana Insurance, LLC*, No. 11 Civ. 8862 (ALC), 2012 WL 1232972, at *4 (S.D.N.Y. Apr. 12, 2012) (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003)). Courts afford "great deference" to the arbitrator's decision: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *Id.* (quoting *ReliaStar Life Insurance Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009)).

Elnenaey has not satisfied this high bar for vacatur on the basis of finality or definiteness. The panel "decided in full and final resolution of the issues submitted for determination" that Elnenaey's claims against the Fidelity Defendants were "dismissed in their entirety" and that his claims against Vanguard were "dismissed without prejudice." Doc. 25-9 at 8. The panel's language thus demonstrates that the award was final. *See Whittaker v. MHR Fund Mgmt. LLC*, No. 20 Civ. 7599 (AT), 2021 WL 9811715, at *8 (S.D.N.Y. Sept. 28, 2021) (denying vacatur where award stated that it was in "full settlement of all claims submitted to this Arbitration" and that "all claims not expressly granted herein are hereby denied"); *Schatz v. Cellco P'ship*, No. 10 Civ. 5414 (JMF),

2016 WL 1717212, at *3 (S.D.N.Y. Apr. 28, 2016) (denying vacatur where award stated that "'[a]ll of [Petitioner's] claims are denied and dismissed with prejudice in their entirety'; that the Award was 'in *full settlement* of *all* claims and counterclaims submitted' in the arbitration; and that '[a]ll claims not expressly granted herein are hereby, denied'" (alterations in original)).

      While Elnenaey is correct that the award does not explicitly mention the unauthorized practice of law claim, the panel's reasoning is clear from the face of the award. The panel dismissed the claims against the Fidelity Defendants under Rule 12504(a)(6)(C) because the claims had already been brought—and dismissed pursuant to an adjudication on the merits—in the Florida action. Doc. 25-9 at 7. That reasoning can be understood as encompassing the unauthorized practice of law claim even if the panel did not expressly reference it. The panel also dismissed the claims against Vanguard under Rule 12206(a) because more than six years had elapsed from the events giving rise to the claim. *Id.* Again, that basis for dismissal could plausibly extend to the unauthorized practice of law claim. There is more than a "barely colorable justification for the outcome reached." *Collaku v. Temco Serv. Indus., Inc.*, No. 18 Civ. 4054 (VEC), 2019 WL 6329391, at *3 (S.D.N.Y. Nov. 26, 2019) (quoting *Banco de Seguros*, 344 F.3d at 260); *see also id.* (explaining that "an award should not be vacated if any plausible reading of the substance supports the arbitrator's conclusions" (internal quotation marks and citation omitted)). Vacatur is not warranted on this ground.[6]

---

[6] Elnenaey maintains that the award here did not contain any catch-all language to indicate that it was dismissing all claims not specifically identified. Doc. 26 at 8–9. But the award stated that it was fully and finally resolving "the issues submitted for determination." Doc. 25-9 at 8. The unauthorized practice of law claim was one of those issues because it was raised in Elnenaey's amended statement of claim. Doc. 25-3 ¶¶ 21–31. Accordingly, the most logical interpretation of the award—and, at the very least, a plausible interpretation—is that it encompassed the unauthorized practice of law claim.

Elnenaey also raises a related argument that "the arbitrators lied by omission" because they failed to note that his claims involved allegations concerning the unauthorized practice of law. Doc. 16 at 16 (capitalization omitted). That argument fails for the same reasons discussed above.

### B. Change in Named Respondents

Next, Elnenaey argues that "FINRA corrupted the arbitration by changing the named respondents sua sponte." Doc. 16 at 15 (capitalization omitted). He asserts that FINRA's claim tracking form identified Fidelity Distributors as a respondent. *Id.*; *see id.* at 117. According to Elnenaey, however, FINRA then substituted Fidelity Investments for Fidelity Distributors on multiple documents, including the final award. *Id.* at 15. Elnenaey argues that he was prejudiced by this change "because it allowed the Panel to grant the joint motion to dismiss filed by all five Fidelity-affiliated Respondents." *Id.* Relatedly, Elnenaey contends that there was "no valid consensus to participate in an arbitration proceeding" because he agreed to an arbitration with Fidelity Distributors—not Fidelity Investments—as a named respondent. *Id.* at 16.

The Fidelity Defendants explain in their brief that Fidelity Investments is the same entity as Fidelity Distributors. Doc. 22 at 8. In fact, Elnenaey's petition itself cites a FINRA report stating that Fidelity Investments was reorganized in January 2020 and was renamed Fidelity Distributors. Doc. 16 ¶ 43. The conduct at issue in the arbitration occurred prior to 2020—while the entity was still known as Fidelity Investments—so the Fidelity Defendants and the panel "merely corrected the name of the entity to reflect the appropriate time period." Doc. 22 at 8.

The Court agrees with the Fidelity Defendants that the name change did not "corrupt" the proceeding. While Elnenaey insists that the change allowed the panel to grant the joint motion to dismiss, the panel could have done that regardless of which name appeared. The Court fails to see how updating the caption to reflect the correct name of the relevant entity could have had any bearing on the panel's decision. The name change argument falls well short of the threshold to vacate an award.

### C. Panel Composition

Elnenaey also claims that FINRA corrupted the arbitration proceeding by appointing its former employee, Eric Howard, to the panel. Doc. 16 at 15. Elnenaey

raises two objections to Howard's participation: (1) he was not on the original arbitrator selection list, and (2) he previously worked at FINRA, which should have disqualified him from sitting on the panel. *Id.*

The Court concludes that Elnenaey waived any challenge to Howard's serving as an arbitrator. "The Second Circuit has long held that a failure to make a timely objection to the selection of an arbitrator precludes a party from later vacating the arbitral award on the basis that the arbitrator was improperly chosen." *Malone v. Credit Suisse Sec. (USA), LLC*, No. 18 Civ. 6872 (VEC), 2019 WL 463434, at *2 (S.D.N.Y. Feb. 5, 2019) (collecting cases); *see also, e.g.*, *Rai v. Barclays Cap. Inc.*, 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of the arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground." (citation omitted)). This rule "prevents parties from sitting on their rights during arbitration and then getting a second chance from the courts should they lose." *Malone*, 2019 WL 463434, at *2.

In this case, FINRA notified the parties in October 2022 that Howard and two other panelists had been appointed. Doc. 25-6 at 2, 7. FINRA also provided the parties with a disclosure report for each panelist. Doc. 25-1 at 3; *see* Doc. 25-7. Howard's report included information about his employment history, educational background, and potential conflicts. Doc. 25-7. The report expressly noted that Howard had worked for FINRA as a legal extern from May 2009 to August 2009. *Id.* at 2, 4. Elnenaey does not dispute that he failed to raise any objection to Howard's appointment during the arbitration proceeding. *See also* Doc. 25-8 at 3 (noting that the parties had accepted the panel's composition). Accordingly, he has waived any argument that Howard's presence on the panel warrants vacatur. *See, e.g.*, *Malone*, 2019 WL 463434, at *4 (finding that petitioner had waived his right to argue that the panel was improperly constituted by completing arbitration without any objection).

### D.  Retaliation

Elnenaey further argues that the arbitration award was "retaliation" for the SEC whistleblower complaint he filed against Fidelity.  Doc. 16 at 16.  In short, he suggests that the SEC is investigating Fidelity's practices as a result of his complaint and that Fidelity could have deduced his identity as the whistleblower.  *Id.* at 17–18.  Elnenaey thus characterizes the award as "a punishment for blowing the whistle," which warrants vacatur.  *Id.* at 18.

This argument fails as well.  Even assuming that Elnenaey's version of events is accurate, he does not explain why the *panel* would have been motivated to retaliate against him.  Elnenaey has not provided anything approaching the "clear and convincing evidence" that is required to demonstrate arbitrator bias.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 106 (2d Cir. 2013) (holding that denial of vacatur "was appropriate because a reasonable person would not '*have to*' conclude that [the arbitrator] was partial to [the plaintiff], or biased against [the defendants]" (citation omitted)).

### E.  Manifest Disregard of Law

Finally, Elnenaey contends that the award should be vacated because the panel acted in manifest disregard of the law.  Doc. 16 at 18.  With respect to the claims against the Fidelity Defendants, he argues that dismissal was improper because they were not named as parties in the Florida action and because the unauthorized practice of law claim was not discovered until 2022—after the Florida action was dismissed.  *Id.* at 19; Doc. 26 at 5.  As for the claims against Vanguard, Elnenaey maintains that dismissal was improper because the Nevada courts retained jurisdiction over the accounts until November 2017, placing his claim within the six-year statute of limitations.  Doc. 16 at 19; Doc. 26 at 5–6.

The Second Circuit has explained that a party "seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where

some egregious impropriety on the part of the arbitrator is apparent." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625–26 (2d Cir. 2021) (citation omitted). To succeed, "a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at 626 (internal quotation marks and citation omitted).

There is no indication that the panel here refused to apply the governing law. Instead, Elnenaey's arguments "amount to a mere disagreement with the outcome of the arbitration." *Katz v. Cellco P'ship*, No. 12 Civ. 9193 (VB), 2018 WL 1891145, at *5 (S.D.N.Y. Apr. 17, 2018). That is not a legitimate basis to vacate the award. *Id.*; *see also, e.g.*, *Pasha v. Janseshki*, 597 F. App'x 25, 26 (2d Cir. 2015) ("[Petitioner's] disagreement with the arbitrator's legal and factual conclusions does not render those determinations beyond the scope of the arbitrator's powers or demonstrate that they were made in manifest disregard of the law.").

### F.  Cross-Motions to Confirm

As noted above, the Fidelity Defendants and Vanguard have cross-moved for confirmation of the award. "Courts in the Southern District have held that upon the denial of a motion for vacatur, the Court must confirm an arbitration award." *Cowin Tech. Co. v. Amazon.com Servs., LLC*, No. 23 Civ. 03054 (ALC), 2024 WL 1076542, at *7 (S.D.N.Y. Mar. 12, 2024) (internal quotation marks and citation omitted). Accordingly, the cross-motions to confirm the award are GRANTED.

## IV.  CONCLUSION

For the foregoing reasons, Elnenaey's amended petition to vacate the award, Doc. 16, is DENIED. The Fidelity Defendants' and Vanguard's cross-motions to confirm the award, Docs. 22, 25, are GRANTED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 22, 25, enter judgment in favor of the Fidelity Defendants and Vanguard, and close the case.

It is SO ORDERED.

Dated:    August 6, 2024
          New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.